ORIGINAL

FILED
EASTERN DISTRICT COURT
DISTRICT OF TEXAS

NOV - 8 2012

DAVID J. MALAND, CLERK
BY
DEPUTY_____

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| v. | § | NO. 4:11CR121 |
| | § | (Judge Schell) |
| LARRY REISMAN (1) | § | |

## FACTUAL STATEMENT

It is hereby stipulated and agreed by the defendant, **Larry Reisman** ("Reisman"), that the following facts are true and correct and that he understands and agrees, with express consent of his counsel, Mike Gibson, that this Factual Statement may be used by the Court to determine whether his plea is voluntary and knowing and by the probation officer and the Court to determine an appropriate sentence for the offense which he is pleading guilty.

**A.  Introduction**

At all times material to the Information:

1.  The Federal Housing Administration ("FHA"), as a means of assisting individuals to obtain home mortgage loans, guaranteed to mortgage lenders the repayment of mortgage loans on behalf of mortgage borrowers. FHA required the borrowers to meet certain criteria in order to obtain FHA insured mortgage loans. One of the criteria that was material to the FHA was that the borrowers had to be able to pay a down payment of 3 percent of the purchase price, all from their own funds, and not with funds provided by

Factual Statement - Reisman
Page 1

any person or entity with an interest in the sale of the property, including the sellers, real estate agents, brokers, builders, loan officers, or any entity associated with them.

2. **Reisman** operated Springfield Custom Homes. Springfield Custom Homes owned a residence located at 5000 Thistle Way, Denton, Texas ("Thistle Way III Property").

3. LJ was a person who recruited a buyer to purchase the Thistle Way III Property from Springfield Custom Homes.

4. AW was a person who LJ recruited to purchase the Thistle Way III Property from Springfield Custom Homes.

5. KM was a person who controlled an entity called KB GROUP ("KBG").

6. YG was a person who worked for Regency Title Company ("RTC") as an escrow officer. As an escrow officer, her duties included preparing closing documents for real estate transactions.

**B.   The Conspiracy**

7. From on or about September 24, 2008, the exact date being unknown, and continuing through on or about October 30, 2008, in the Eastern District and elsewhere **Reisman** knowingly combined, conspired, confederated and agreed together with, YG, KM, and others, to conduct a financial transaction knowing the property involved in the financial transaction represented the proceeds of some form of unlawful activity, which property was in fact the proceeds of specified unlawful activity, specifically Wire Fraud, a violation of 18 U.S.C. § 1343, knowing that the transaction was designed to conceal and

disguise the nature, location, source ownership and control of the proceeds of the specified unlawful activity, a violation of 18 U.S.C. § 1956(a)(1)(B)(i).

C. **The Manner and Means of the Conspiracy**

8. On or about September 24, 2008, LJ recruited AW to purchase the Thistle Way III Property from Springfield Custom Homes.

9. AW completed a residential loan application. AW's residential loan application was used to obtain a mortgage loan on behalf of AW, which was insured by the FHA. The loan application indicated that AW was receiving a "gift" in the amount of $6,900 in order to pay the seller the down payment that was required by HUD for insuring the loan. The representation was material to HUD and was false.

10. **Reisman**, KM, YG and others conspired together and agreed that KM would state she was AW's relative, a fact that KM, **Reisman**, and YG knew was false, and that she would provide a "gift" of $6,900, for AW to pay his down payment on the Thistle Way III Property, a fact that they also knew to be false because, as **Reisman**, KM and YG knew, **Reisman** agreed to repay the $6,900 to KBG.

11. On or about October 3, 2008, KM executed a "Gift Letter" in which KM certified she was providing $6,900 as a gift to AW, her "nephew," to purchase a home. KM knew that the "Gift Letter" was materially false. **Reisman**, YG, and KM knew that KM was going to be repaid the $6,900 plus a fee.

12. On or about October 28, 2008, in order to conceal that **Reisman** was reimbursing KM for suppling the down payment funds for AW, an invoice was created,

appearing to be from KBG, to Springfield Custom Homes, Inc., for the amount of $7,940 for "services provided."

13. On or about October 28, 2008, AW closed on the Thistle Way III Property at the RTC office and YG prepared the Settlement Statement that showed that Springfield Custom Homes was selling the Thistle Way III Property for $230,000, and that AW was using funds of $6,900 to purchase the property, which funds were the "gift funds from KM."

14. On or about October 29, 2008, KM transferred $6,900, by wire, to YG's title company, RTC, which YG listed on the settlement statement as "gift funds from KM." RTC sent its funds from Valliance Bank, located at 2251 Eldorado Parkway, Suite 200, in Mckinney, Texas to KM, located in Oklahoma.

15. On or about October 30, 2008, in the closing of the sale of the Thistle Way III Property, YG disbursed funds from **Reisman's** seller's proceeds, totaling $7,940, to a bank account in the name of KBG, knowing that KBG was KM's company and that the funds being disbursed to KM were reimbursement to KM for providing the funds to AW to pay the down payment. The payment to KBG was a financial transaction that was intended to conceal from HUD the fact that loan funds had been used to pay AW's down payment.

16. On or about October 28, 2008, as part of the closing on the sale of the Thistle Way III Property, and for the purpose of influencing the FHA, Reisman executed an Addendum to HUD-1 Settlement Statement in which he certified, as the seller of the

property, that he had no knowledge of any loans that had been made or would be made to the borrower for the purpose of financing the transaction, and that he had not and would not pay or reimburse the borrower for any part of the borrower's closing costs which had not been disclosed in the sales contract, which he knew was false.

17. AW failed to keep the mortgage payments current and the house was foreclosed upon, causing a loss to the lending institution.

### DEFENDANT'S SIGNATURE AND ACKNOWLEDGMENT

I have read this Factual Statement and the Information or have had them read to me and have discussed them with my attorney. I fully understand the contents of this Factual Statement and agree without reservation that it accurately describes the events and my acts.

Dated: 11-01-12

_____
LARRY REISMAN
Defendant

### DEFENSE COUNSEL'S SIGNATURE AND ACKNOWLEDGMENT

I have read this Factual Statement and the Information and have reviewed them with my client, Larry Reisman. Based upon my discussions with the defendant, I am satisfied that the defendant understands the Factual Statement as well as the Information, and is knowingly and voluntarily agreeing to these stipulated facts.

Dated: 11/1/12

_____
MIKE GIBSON
Attorney for Defendant